NOT DESIGNATED FOR PUBLICATION

No. 120,165

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDDIE JOE FIELD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed June 28, 2019. Vacated and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Eddie Joe Field appeals the district court's decision revoking his probation and ordering him to serve his original prison sentence. The district court bypassed the imposition of an intermediate sanction by finding that the safety of the members of the public would be jeopardized or that Field's welfare would not be served by imposing such a sanction. On appeal, Field claims the district court erred by failing to state with sufficient particularity why continuing his probation would jeopardize public safety or would not serve his own welfare. We agree with Field's claim, so we vacate the district court's order revoking his probation and remand for further proceedings.

1

On February 1, 2017, Field pled guilty to one count of possession of methamphetamine, one count of identity theft, one count of unlawful use of drug paraphernalia, and one count of having improper bicycle lamps, brakes, or reflectors. On April 10, 2017, the district court sentenced Field to a controlling term of 34 months' imprisonment but granted probation for 18 months with mandatory drug treatment.

The State later filed a motion to revoke Field's probation because he failed to report to his probation officer as directed. At a hearing on December 27, 2017, Field stipulated to the probation violation and the district court imposed a three-day jail sanction. The district court reminded Field that he had 24 hours after completing that sanction to contact his probation officer.

The State later filed a second motion to revoke Field's probation alleging that he failed to contact his probation officer after he served his three-day jail sanction. At a hearing on March 23, 2018, Field again stipulated to violating his probation by failing to report. Field's probation officer testified that since May 9, 2017, "the only time [she had] seen [Field] has been in court." She told the district court that after the December 2017 hearing, she directed Field to come to her office within 72 hours of his release from jail after serving the three-day sanction, but he had never reported. She also told the district court that Field had not yet reported for his intake appointment for mandatory drug treatment. When asked whether Field's welfare "could be served if he were to be placed back on probation today," his probation officer responded, "If he continues to fail to report, there's nothing that [probation] can do to help him."

The State asked the district court to revoke Field's probation, while Field requested another intermediate sanction. Field told the district court that he had not reported to his probation officer because he had walking pneumonia and had been living in a carport, but

he now had a house to live in and felt that he would benefit from drug treatment. The district court noted that Field had an extensive criminal history, he had been on probation before, and he had "done nothing towards" the required drug treatment. The court also stated that it did not understand why Field did not at least contact his probation officer to tell her that he was unable to report due to illness. The district court continued:

> "We offer Senate Bill 123 treatment to have you—to give you drug and alcohol treatment. You have a part to help. You haven't done anything to avail yourself of that program in this case. Under the statute, normally, you would be given a quick dip of some summation, or the 120 or 180-day prison sanction. The Court could revoke your probation if they found you were an absconder. I think we are real close on that. I don't know if we made it or not, because I don't know where you were living. What you're telling us, what you're telling your attorney is you were living in a carport.
> "Your probation officer didn't have a phone number, didn't have an address for you. The last address she had was The Mission, and she went there, couldn't find you there, so I don't know where you were staying at during this period of time, really.
> "But what I do find—one second. *I do find that your inability to be supervised, because you have refused to place yourself under the guidance of your probation officer, that that does affect the safety of the members of the community in this particular community.*
> "*I also find that your welfare is not gonna be—not gonna* [*sic*] *be served by having you placed back on probation in this case.* I'm looking at your—you have a habitual violator. You have—I'm just looking at the drug [or] alcohol related. Driving while license is suspended, possession of a narcotic drug, drugs or opiates, a first possession, that was back in 2007, the other drug case was back in 1994, but I find that you've got nothing to help yourself or help the community in this case, and I find that placing you back on probation would not be appropriate, that it meets the standards of the statute to revoke your probation, to have you serve the original sentence in this case. And that will be the order of the Court." (Emphasis added.)

In the written journal entry, the district court indicated that it had revoked Field's probation under K.S.A. 2018 Supp. 22-3716(c)(9)(A) based on a "public safety or

offender welfare" finding. The journal entry stated that the reasons supporting that decision were "no benefit to [Field] or community if [Field would be] placed back on probation due to failure to report." Field timely appealed the district court's judgment.

ANALYSIS

On appeal, Field claims the district court committed reversible error when it revoked his probation for failing to report to his probation officer without imposing another intermediate sanction and without stating with sufficient particularity why continuing his probation would jeopardize public safety or would not serve his own welfare. Conversely, the State argues that the district court's reasons for finding that public safety would be jeopardized or that Field's own welfare would not be served by imposing an intermediate sanction "were sufficiently distinct and detailed." Alternatively, the State argues that any error was harmless because the district court could have revoked Field's probation without imposing an intermediate sanction because his probation was originally granted as the result of a dispositional departure.

The procedure for revoking a defendant's probation is governed by K.S.A. 2018 Supp. 22-3716. Generally, once there has been evidence of a violation of the conditions of probation, the decision to revoke probation rests in the district court's sound discretion. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). An abuse of discretion occurs when judicial action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). The party asserting the district court abused its discretion bears the burden of showing such an abuse of discretion. *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012). A district court abuses its discretion by committing an error of law in the application of K.S.A. 2018 Supp. 22-3716 when revoking a defendant's probation. See *State v. Still*, No. 112,928, 2015 WL 4588297, at *1 (Kan. App. 2015) (unpublished opinion).

4

K.S.A. 2018 Supp. 22-3716 generally provides that once a defendant has violated the conditions of probation, the district court must apply graduated intermediate sanctions before the court can revoke probation and order the defendant to serve the sentence imposed. See K.S.A. 2018 Supp. 22-3716(c)(1)(A)-(D). But under K.S.A. 2018 Supp. 22-3716(c)(9)(A), the district court may revoke an offender's probation without having previously imposed an intermediate sanction if the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the offender will not be served by imposing such a sanction. Whether the district court's reasons are sufficiently particularized as required by statute is a question of law over which an appellate court has unlimited review. See *State v. McFeeters*, 52 Kan. App. 2d 45, 47-48, 362 P.3d 603 (2015).

Here, the district court imposed an intermediate sanction because of Field's first probation violation. But under K.S.A. 2018 Supp. 22-3716(c)(1), Field was entitled to receive at least one more intermediate sanction for violating his probation by failing to report as directed. The district court bypassed that intermediate sanction and revoked Field's probation by finding under K.S.A. 2018 Supp. 22-3716(c)(9)(A) that such a sanction would jeopardize public safety or would not serve Field's own welfare.

To support his claim that the district court's findings under K.S.A. 2018 Supp. 22-3716(c)(9)(A) were not sufficiently particularized, Field cites *McFeeters* and *State v. Clapp*, 308 Kan. 976, 425 P.3d 605 (2018). In *McFeeters*, the district court bypassed intermediate sanctions and revoked McFeeters' probation under K.S.A. 2014 Supp. 22-3716(c)(9), which contained language identical to that now found in K.S.A. 2018 Supp. 22-3716(c)(9)(A). 52 Kan. App. 2d at 46-49. The district judge explained:

> "'My major concern is drug usage. This is a drug case; you've failed to go to treatment. You only reported from the records that I see for about two months and I don't know how many UAs you had in two months, but I would venture to say you didn't have

5

that many. You had one that you were dirty, you may have had more, I don't know how many you had. That was one question I was going to ask [your probation officer], unfortunately, he is not here today, but you stopped reporting in two months. I don't know about the drug treatment and what was set up and whether you could get in right away or not, but it seems to me if you had been on probation before, you knew what you needed to do, you did not do that, you picked up another charge in the meantime, albeit a minor charge, apparently, the municipal court charge, but I do have concerns. I read through last night your LSI-R report and the substance abuse evaluation and I think there was some question in the substance abuse evaluation how accurate your recollection was with regard to your usage of drugs. I think that there was some conflicts, at least the evaluator believed that you said different things different times as to your drug usage, but definitely the recommendation was for completion of the intensive outpatient treatment program which you did not do.'" 52 Kan. App. 2d at 47.

On appeal, this court vacated the probation revocation order and remanded the case to the district court for a new dispositional hearing because the district court's findings were not sufficiently particularized. 52 Kan. App. 2d at 49. This court held:

"The remarks made by the district court at McFeeters' revocation simply repeat the type of reasoning historically relied upon by sentencing courts in discussing amenability to probation when exercising their discretion to revoke the privilege of probation. The law has changed. Simply stated, the district court's conclusory remarks about McFeeters' apparent unwillingness or inability to conform his behavior to the requirements of probation fail to explain *how* members of the public would be jeopardized if McFeeters remained on probation or *how* McFeeters' welfare would not be served by imposition of the intermediate sanctions . . . .

"As it stands now, any such relationship between the district court's findings and either of the exceptions under K.S.A. 2014 Supp. 22-3716(c)(9) would need to be implied. Implicit findings are insufficient. We will refrain from substituting our inferences for the district court's legally required explanations. Therefore, we conclude the district court's findings were not set forth with particularity as required by K.S.A. 2014 Supp. 22-3716(c)(9). [Citation omitted.]" 52 Kan. App. 2d at 49.

6

In *Clapp*, another case where the district court bypassed intermediate sanctions under K.S.A. 2014 Supp. 22-3716(c)(9), the district court explained its decision to revoke probation, as follows:

> """Well, Mr. Clapp, the real question I guess is whether or not I can with a straight face ask Community Corrections to continue to try to supervise you. . . . [You have] a dangerous criminal history. You got three weapons convictions in this case. Previously you have an unlawful discharge of a firearm, a criminal use of a weapon, criminal possession of a firearm, criminal possession of a firearm . . . so that makes . . . seven weapon [convictions] and you're convicted of basically being a drug dealer, and then you haven't been honest with your [probation officer] and it seems to me at age 37 you should have figured out that that is what we call in Drug Court a proximal goal.
>
> . . . .
>
> """ . . . I wish that you had taken and cherished your chance at Community Corrections but I really just get the feeling that you thought Community Corrections was something you were going to try to get through so that you could then go live your life the way that you wanted to. I never and I have today still not got the feeling that you actually valued Community Corrections as a way that could have some help in changing how you think, how you live your life so that you can be a productive law abiding citizen.'" [Citation omitted.]" 308 Kan. at 988.

On appeal, the Kansas Supreme Court reversed and remanded for a new dispositional hearing, adopting reasoning much like that discussed in *McFeeters*. *Clapp*, 308 Kan. at 991. Our Supreme Court stated: "In revoking Clapp's probation and imposing his underlying sentence, the district court did not mention K.S.A. 2014 Supp. 22-3716(c)(9), nor did it make *any* explicit findings regarding how imposing an intermediate sanction would jeopardize the safety of the public or be contrary to Clapp's welfare." 308 Kan. at 989. The court continued:

> "Even if we were to agree with the [Court of Appeals] panel that the district court's intention was to use the bypass provision of subsection (c)(9), the record reflects a failure to set forth the reasons an intermediate sanction would have been a public safety

7

issue or contrary to Clapp's welfare. . . . '[T]he relevant cases make it clear that an implicit determination is not enough when particularized findings are required by statute.' Instead, '[w]hen something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.' [Citations omitted.]

. . . .

"Similar to the district court's remarks in *McFeeters*, we discern the district court's remarks to Clapp were akin to the reasoning historically relied upon by district courts in exercising unfettered discretion to revoke probation for any violation and impose an underlying prison sentence. But we now have a new probation revocation scheme in this State, and we hold that the district court failed to comply with that new law." 308 Kan. at 989-90.

Returning to our case, Field argues that, like the district courts in *Clapp* and *McFeeters*, the district court here did not sufficiently state how an intermediate sanction would jeopardize the public safety or run contrary to his own welfare. Rather, he contends, the district court's comments were "generic findings" of the type *McFeeters* and *Clapp* found insufficient. He asks this court to remand for a new hearing that complies with the requirements of K.S.A. 2018 Supp. 22-3716.

In response, the State asserts that the district court's comments were "much more particular" than those at issue in *Clapp*. The State correctly points out that unlike the district court in *Clapp*, the district court here used the statutory language in revoking Field's probation. The State contends that Field's failure to report to his probation officer made it impossible for his probation officer to direct him to work on the tasks required as conditions of his probation—such as drug treatment—that would serve his welfare. Finally, the State notes that the district court also found that Field's failure to report "affect[s] the safety of the members of the community."

What the State fails to acknowledge is that while all of its arguments have a logical appeal, they still require this court to reach conclusions that the district court did

not state with particularity. As the court stated in *Clapp*, the district court here needed to explain with particularity *how* Field's failure to report jeopardized the public's safety or *how* Field's welfare would not be served by imposing an intermediate sanction because of his failure to report. 308 Kan. at 989-90. Simply using the language "safety of members of the public" and "welfare of the offender will not be served" is not enough. The statute requires that "the reasons for" such findings must be "set[] forth with particularity." See K.S.A. 2018 Supp. 22-3716(c)(9)(A). "[W]hen something is to be set forth with particularity, it must be distinct rather than general, with exactitude in detail, especially in description or stated with attention to or concern with details." *Clapp*, 308 Kan. at 989.

Moreover, the *McFeeters* court emphasized: "Implicit findings are insufficient. We will refrain from substituting our inferences for the district court's legally required explanations. [Citation omitted.]" 52 Kan. App. 2d at 49. Although a reasonable person can infer that probation might not serve Field's own welfare when he fails to report for drug treatment, any such inference will not substitute for the *explicit* findings the district court must make under the statute. Based on the decisions in *Clapp* and *McFeeters*, we conclude the district court erred by failing to make sufficiently particularized findings to bypass intermediate sanctions under K.S.A. 2018 Supp. 22-3716(c)(9)(A).

Alternatively, the State argues that any error was harmless because the district court could have revoked Field's probation under K.S.A. 2018 Supp. 22-3716(c)(9)(B), which allows a district court to bypass intermediate sanctions if the probation "was originally granted as the result of a dispositional departure." The State asserts that Field's probation was originally granted as the result of a dispositional departure, so it is unnecessary to remand this case for more particularized findings under K.S.A. 2018 Supp. 22-3716(c)(9)(A). Field has not responded to this argument.

We first observe that the record is unclear whether Field's probation was originally granted as the result of a dispositional departure. The journal entry of judgment from the

9

sentencing hearing reflects that the district court granted Field probation for 18 months with mandatory drug treatment under K.S.A. 2016 Supp. 21-6824. The journal entry does not state that the district court granted a dispositional departure. And after examining the question at the sentencing hearing, the district court concluded that Field's original probation was "really not a departure."

In any event, K.S.A. 2018 Supp. 22-3716(c)(9)(B) states that the district court *may* bypass intermediate sanctions if the probation was originally granted as the result of a dispositional departure. The district court must invoke this exception for it to apply and here the district court did not invoke this exception in revoking Field's probation. Thus, we reject the State's harmless error analysis for the purpose of this appeal. On remand, the State is free to argue that the exception under K.S.A. 2018 Supp. 22-3716(c)(9)(B) applies to Field's case.

In sum, we conclude the district court erred by revoking Field's probation without making sufficiently particularized findings to bypass intermediate sanctions under K.S.A. 2018 Supp. 22-3716(c)(9)(A). As a result, we vacate the order revoking Field's probation and remand to the district court for a new dispositional hearing. At that hearing, the district court can either impose an intermediate sanction for Field's probation violation or, in the alternative, the court must satisfy one of the applicable statutory requirements for bypassing an intermediate sanction.

Vacated and remanded with directions.